IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

STEPHANIE LYNN FORD,      )
                          )
          Plaintiff,      )
                          )
     v.                   )   C.A. No.  05-118 (KAJ)
                          )
UNUM LIFE INSURANCE COMPANY )
OF AMERICA                )
                          )
          Defendant.      )

## MEMORANDUM OPINION

———————————————

Stephanie Lynn Ford, 19 Albany Avenue, New Castle, Delaware 19720; Pro se Plaintiff.

Walter P. McEvilly, Jr., Esq., Kirk L. Wolgemuth, Esq., Stevens & Lee, 1105 North Market Street, Suite 700, Wilmington, DE 19801; Counsel for Defendant.

———————————————

December 6, 2006
Wilmington, Delaware



JORDAN, District Judge

## I.   INTRODUCTION

This case involves claims of discrimination and breach of contract brought by Stephanie Lynn Ford, a pro se plaintiff, against Unum Life Insurance Company of America ("Unum").  She has filed two actions relating to Unum's denial of her claim for benefits.  Ms. Ford first filed a complaint in the Court of Common Pleas for the State of Delaware, seeking damages for lost wages, pain and suffering, mortgage payments, a lost life insurance policy, and lost "eligibility To [sic] be rehired for employment after 17 years of service," all allegedly resulting from Unum's denial of requested benefits. (Docket Item ["D.I."] 2 at 5.)  Unum removed that case to this court.  (Civ. A. No. 05-cv-105, D.I. 1.)  Ms. Ford filed a second complaint in this court, seeking recovery of long-term disability benefits and alleging discrimination on an unspecified basis.  (D.I. 2 at 1-3.)  Those cases were consolidated.  (Civ. A. No. 05-105, D.I. 13.)  On March 9, 2005, I granted Unum's Motion to Dismiss the claims originally filed in the Court of Common Pleas (Civ. A. No. 05-105, D.I. 2), finding that Ms. Ford's state law claims for breach of contract, negligence, and intentional infliction of emotional distress were preempted under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and that the damages she requested were not available under ERISA.  (Civ. A. No. 05-105, D.I. 18.)

Ms. Ford now asserts that she was wrongly denied disability benefits under a Long-Term Disability Plan (the "Plan")[1], a plan administered by Unum and regulated by

---

[1]  The Plan is reproduced at Civ. A. No. 05-CV-105, D.I. 4, Ex. A.

ERISA, which denial amounted to discrimination under Title VII or Section 1981[2] and

breach of contract.[3]  (D.I. 45 at 9.)  She also alleges that Unum wrongly terminated a

$75,000 life insurance policy on which she has paid premiums.  (D.I. 2 at 3, 5; D.I. 45 at

2, 7.)  Unum contends it did not violate Title VII, because it did not employ Ms. Ford,

nor did it violate Section 1981.  (D.I. 36 at 9-10.)  Unum also argues that Ms. Ford's

breach of contract claim for denial of benefits is preempted by ERISA (*id.* at 10), and

that the appropriate standard for me to employ in reviewing Unum's decision is an

"abuse of discretion" standard.  (*Id.* at 13-18.)  Unum further argues that it did not abuse

its discretion when rendering its decision against Ford.  (*Id.* at 18-21.)  Before me now

is a Motion for Summary Judgment filed by Ms. Ford ("Ms. Ford's Motion") (D.I. 45), and

a Motion for Summary Judgment filed by Unum.  (D.I. 36.)  Unum's Motion does not

address Ms. Ford's $75,000 life insurance policy claim.[4]  Accordingly, I construe

---

[2] Ms. Ford alleges that Unum discriminated against her, violating 18 U.S.C. §§ 2301 through 2318.  (D.I. 2 at 1-2.)  Sections 2301 through 2310 do not exist, and Sections 2311 through 2318 are criminal statutes relating to stolen property.  As pro se complaints are to be construed liberally and are interpreted to raise the strongest arguments suggested therein, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *Todaro v. Bowman*, 872 F.2d 43, 44 n.1 (3d Cir. 1989), I will construe Ms. Ford's complaint as attempting to raise a discrimination claim under Title VII, 42 U.S.C. § 2000e-2, and under 42 U.S.C. § 1981.

[3] In addition, Ms. Ford asserts claims relating to lost wages, pain and suffering, borrowing money against her 401K plan, lost medical insurance, and "eligibility To [sic] be rehired for employment after 17 years of service."  (D.I. 2 at 3, 5.)  *See infra* Section IV.E.

[4] As stated above, in a Memorandum Order dated March 9, 2006 (Civ. A. No. 05-105, D.I. 18), I granted Unum's Motion to Dismiss the claims originally filed in the Delaware Court of Common Pleas (Civ. A. No. 05-105, D.I. 2), finding that Ms. Ford's state law claims for breach of contract, negligence, and intentional infliction of emotional distress were preempted under ERISA, and that the damages she requested were not available under ERISA.  (Civ. A. No. 05-105, D.I. 18.)  One of the claims

2

Unum's Motion for Summary Judgment as a Motion for Partial Summary Judgment

("Defendant's Motion").  For the reasons that follow, Defendant's Motion will be granted,

and Plaintiff's Motion will be denied.

## II.    BACKGROUND[5]

Ms. Ford is a former employee of Christiana Care Health System, Inc.

("Christiana"), where she worked as a radiology clerk for seventeen years.  (D.I. 45 at

3.)  Ms. Ford was a participant of Christiana's Long-Term Disability Plan, effective

January 1, 1999.  (Civ. A. No. 05-CV-105, D.I. 4 ["App'x"], Ex. A at 4.)  Christiana

declared itself "the Plan Administrator and named fiduciary of the Plan, with authority to

delegate its duties."  (*Id.* at 31.)  The Plan indicates that it was "funded as an insured

plan. . . , issued by Unum Life Insurance Company of America."  (*Id.* at 32.)  The Plan

also states that Unum was its "designee" as a "claims fiduciary."  (*Id.* at 36.)  The Plan

gave "the broadest discretion permissible under ERISA and any other applicable laws"

to the Plan Administrator and its designee and stated that the Plan Administrator or its

designee's decisions would "constitute final review of [the participant's] claim by the

Plan.  (*Id.*)

On October 28, 2003, Ms. Ford was involved in a hit-and-run automobile

accident.  (D.I. 2 at 2.)  Her treating physician, Dr. Ross M. Ufberg, examined her on

_____

raised by Ms. Ford in the Court of Common Pleas was for "loss [of a] $75,000 Life
Insurance Policy."  (Civ. A. No. 05-105, D.I. 1, Ex. A at ¶10.)  She has raised that claim
again.  (D.I. 2 at 3, 5; D.I. 45 at 2, 7.)  Unum did not address the claim in its briefing.  As
discussed further herein, *see infra* pp. 17-19, that claim will require further
development.

[5]  The following background information is drawn from the parties' submissions
and is cast in the light most favorable to the plaintiff.

3

October 30, 2003 (App'x, Ex. B at 122-126), November 10, 2003 (*id.* at 119-21),

December 4, 2003 (*id.* at 116-18), December 22, 2003 (*id.* at 113-15), January 20,

2004 (*id.* at 110-12), and February 23, 2004. (*Id.* at 107-09.)  On each of these

occasions, Dr. Ufberg diagnosed that Ms. Ford sustained rib trauma; cervical, thoracic,

and lumbosacral strain; bilateral hamstring strain; and right shoulder, arm, and forearm

strain. (*Id.* at 108, 110-11, 113-14, 116-17, 120, 124.)  After each examination, he

opined that Ms. Ford was "totally incapacitated." (*Id.* at 109, 112, 115, 118, 121, 126.)

After his last examination, he indicated that Ms. Ford would be incapacitated until

March 29, 2004. (*Id.* at 109.)  His recommendations from those visits included

participating in outpatient therapy to reduce pain symptoms, taking Motrin for pain and

Flexeril for muscle spasms, participating in a home program of stretching exercises,

and using a cervical pillow. (*Id.* at 108, 111, 114, 117, 120, 124-25.)

On February 17, 2004, Ms. Ford filed a long-term disability claim with Unum. (*Id.*

at 16-45.)  On March 23, 2004, Sheila Weiss, a registered nurse, reviewed Ms. Ford's

medical records. (*Id.* at 155-57.)  Ms. Weiss observed that Ms. Ford sustained soft

tissue injuries from the automobile accident in the form of sprain and strain injuries and

had received conservative medical treatment consisting of therapeutic exercises,

modalities, and mild medications. (*Id.* at 157.)  She concluded that "[m]edical necessity

of activity restrictions beyond 2-4 weeks following the acute soft tissue injury are not

supported by the available medical information." (*Id.*)  She also opined that "[i]n the

presence of incapacitating pain one would expect a more aggressive work up including

4

additional diagnostic testing and possible chronic pain management referral. . . . Pain

has been managed with mild medications." (*Id.*)

On March 25, 2004, Dr. Allene Scott, an MD and board certified in occupational

medicine, reviewed the medical summary by Sheila Weiss and the records from Dr.

Ufberg. (*Id.* at 158.) Dr. Scott opined that the records were consistent with a

strain/sprain injury, and no physical findings or diagnostic test results indicated that she

sustained other injuries. (*Id.*) Dr. Scott was "in agreement with the analysis and

conclusions of Sheila Weiss" and found "no basis in the records for the ongoing 'totally

incapacitated' restrictions. . . . The non-aggressive treatment and infrequent doctor visit

schedule do not support this." (*Id.*)

On March 29, 2004, Unum informed Ms. Ford that it did not approve her request

for long-term disability benefits, because she did not satisfy the ninety-day elimination

period set forth in her policy. (*Id.* at 166-69.) Based on the evaluations conducted by

Ms. Weiss and Dr. Scott, Unum determined that her disability claim was not medically

supported. (*Id.*, Ex. B at 167.) Unum summarized Dr. Ufberg's medical findings and

recommendations, then explained to Ms. Ford that there was "no data provided which

would support restrictions and limitations beyond a 2 to 4 week recovery period typically

allowed for an acute strain/sprain injury." (*Id.*) It further explained that "in the presence

of incapacitating pain, one would expect a more aggressive work up including additional

diagnostic testing and a possible chronic pain management referral," and that the

prescribed mild medications were not consistent with the reported level of symptoms.

(*Id.*) Unum concluded that it "would not support the medical necessity of activity

5

restrictions of greater than 4 weeks for the acute soft tissue injuries that are noted."
(*Id.*)

In response to Unum's denial of disability benefits for Ms. Ford, Dr. Ufberg wrote a letter to Unum, stating that he was "appalled that [Unum's] 'medical consultants,' without even examining Ms. Ford [could] look at [his] office notes and determine disability." (D.I. 2 at 10.) Dr. Ufberg disagreed with the Unum medical consultants' conclusions that Ms. Ford's recovery period should have been two to four weeks. (*Id.*) He stated that Ms. Ford demonstrated "significant spasm over her lumbosacral spine range of motion" on October 30, 2003, and on November 10, 2003, she still had "marked limitation over her cervical and lumbosacral spine range of motion which did not permit her to do her job duties." (*Id.*) He observed that she still had "significant spasms over her left lumbar paraspinal muscles" on March 29, 2004. (*Id.*) He concluded that Ms. Ford would be cleared for a trial return to work with fifteen-pound lifting restrictions on April 13, 2004. (*Id.*)

On April 26, 2004, Ms. Ford appealed Unum's decision to deny her long-term disability benefits. (App'x, Ex. B at 206.) She did not submit additional information to support her disability claim. On June 18, 2004, Susan Grover, a registered nurse, reviewed Ms. Ford's medical files. (*Id.* at 231-33.) Ms. Grover concluded that Ms. Ford suffered a sprain/strain in the cervical, lumbar, and shoulder areas. (*Id.* at 233.) She determined that the usual recovery for injuries sustained by Ms. Ford would not exceed four to six weeks, and that "at some point in time [Ms. Ford's] medical records do not support inability to perform a sedentary to light occupation." (*Id.* at 233.) Ms. Grover

6

also determined that Ms. Ford's level of treatment was not consistent with a level of treatment that would be appropriate if she were totally disabled. (*Id.*)  Specifically, she opined that "with ongoing complaints of pain, one would have expected further diagnostics to be performed, such as x-ray, MRI, and/or EMG/NCV," and that Dr. Ufberg should have referred her to pain management. (*Id.*)  She further opined that Ms. Ford "was taking [a] minimal amount of medications, which was not consistent with pain that would rise to the level of impairment." (*Id.*)

On June 23, 2004, Alan Neuren, MD, reviewed Ms. Ford's medical records and concurred with Ms. Grover's analysis. (*Id.* at 234-35.)  Dr. Neuren stated that the records indicated that Ms. Ford "sustained mild soft tissue injury which should have resolved adequately within 4-6 weeks." (*Id.* at 235.)  He further explained that there were "no findings such as soft tissue swelling, ecchymoses, or x-ray reports documenting soft tissue changes consistent with significant sprains." (*Id.*)  He concluded that "[i]mpairment beyond this time frame is not supported." (*Id.*)

On June 28, 2004, Unum told Ms. Ford that its original decision to deny her claim was appropriate, because the medical records did not support impairment beyond six weeks at most, which was well under the ninety-day elimination period. (*Id.* at 237-39.)  After summarizing medical reports by Dr. Ufberg, Unum stated that the medical records supported the diagnosis of a sprain/strain of the cervical, lumbar, and shoulder area. (*Id.* at 238.)  Those sprains/strains resulted in a decreased range of motion, tenderness, and spasm on exam, but no neurological deficits. (*Id.*)  It concluded that the usual recovery time for that type of injury would not exceed four to six weeks. (*Id.*)

7

Unum pointed out that Ms. Ford's complaint's of ongoing pain should have resulted in further diagnostic testing, including x-ray, magnetic resonance imaging, or EMG/NCE, as well as a referral to pain management. (*Id.*) It also noted that the amount of medication Ms. Ford was taking was not consistent with the pain that would accompany a disability that would qualify under the Plan. (*Id.*)

## III.   STANDARD OF REVIEW FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56(c), a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact, and that the moving party is entitled to judgment as a matter of law.  In determining whether there is a triable issue of material fact, a court must review the evidence and construe all inferences in the light most favorable to the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  However, a court should not make credibility determinations or weigh the evidence. *Id.* To defeat a motion for summary judgment, Rule 56(c) requires that the non-moving party "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citations omitted).  The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587 (citation omitted).  Accordingly, a mere scintilla of evidence in support of the nonmoving

8

party is insufficient for a court to deny summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV.   ANALYSIS

### A.   *Breach of Contract Claim Preempted by ERISA*

Because Ms. Ford's breach of contract claim relates to benefits offered as part of her employment (*see* D.I. 2 at 1-3; D.I. 45 at 5), the provisions of ERISA apply. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 44 (1987) ("ERISA comprehensively regulates. . .employee welfare benefits plans that, through the purchase of insurance or otherwise, provide. . .benefits in the event of sickness, accident, disability, or death.") (citing 29 U.S.C. § 1002(1)) (internal quotation marks omitted).   It is beyond dispute that, subject to narrow exceptions not applicable here, state laws are preempted by ERISA if they "relate to any employee benefit plan," 29 U.S.C. 1144(a). *See Pilot Life*, 481 U.S. at 45-46 ("We have observed ... that the express pre-emption provisions of ERISA are deliberately expansive ... .").   Specifically, common law causes of action for breach of contract that have a connection to a benefit plan are preempted. *Id.* at 43-44, 47-48, 57; *Pane v. RCA Corp.*, 868 F.2d 631, 635 (3d Cir. 1989).

### B.   *Standard of Review under ERISA*

#### 1.   *Discretionary Language of the Plan*

The Supreme Court has stated that, where an ERISA plan gives the plan administrator "discretionary authority to determine eligibility for benefits or to construe the terms of the plan," the appropriate standard of review for a trial court to apply is abuse of discretion. *Firestone Tire & Rubber Co. v. Bruck*, 489 U.S. 101, 115 (1989).

9

That is, a court may overturn a plan administrator's decision only if that decision is arbitrary and capricious, which is defined as being "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Pinto v. Reliance Std. Life Ins. Co.*, 214 F.3d 377, 387 (3d. Cir. 2000). Here, the Plan provides that "[i]n exercising its discretionary powers under the Plan, the Plan Administrator, and any designee (which shall include Unum as claims fiduciary) will have the broadest discretion permissible under ERISA and any other applicable laws, and its decisions will constitute final review of your claim by the Plan." (App'x, Ex. A at 36.)

### 2.   Conflict of Interest

Given the Plan's broad grant of discretionary authority to Unum, it is appropriate to apply the abuse of discretion standard, as long as the plan administrator is not operating under a conflict of interest. *See Pinto*, 214 F.3d at 383 ("[I]f a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, *that conflict must be weighed as a 'factor in determining whether there is an abuse of discretion.*'" (quoting *Firestone*, 489 U.S. at 111; emphasis in *Pinto*). The United States Court of Appeals for the Third Circuit has stated that when an employer pays an independent insurance company to fund, interpret, and administer a plan, a heightened standard of review is required, because insurance companies have an incentive to deny close claims to keep costs down, and they are more resistant to consequences of denying benefits, such as a loss of employee morale or the demand for higher wages. *Id.* at 383, 388-90. This heightened form of review is formulated on a sliding-scale basis, *id.* at 391-93, meaning that district courts should "consider the

10

nature and degree of apparent conflicts with a view to shaping their arbitrary and capricious review of the benefits determinations of discretionary decisionmakers." *Id.* at 393. Thus, the arbitrary and capricious standard should be "more penetrating the greater is the suspicion of partiality, less penetrating the smaller that suspicion is." *Id.* at 392-93 (quoting *Wildbur v. AROO Chem. Co.*, 974 F.2d 631, 638 (5th Cir. 1992)).

To determine the severity of a conflict, *Pinto* offers a nonexclusive list of factors to consider. That list includes: (1) the sophistication of the parties; (2) the information accessible to the parties; (3) the exact financial arrangement between the insurer and the company; and (4) the status of the fiduciary, because the deterioration of the company may affect the company's desire to maintain employee satisfaction. *Id.* at 392.

Concerning the sophistication of the parties, I will assume there is a substantial imbalance. Ms. Ford is a pro se plaintiff and likely has had little or no experience handling ERISA claims. Unum, on the other hand, is an insurance company which no doubt deals with ERISA claims on a regular basis. This factor, then, weighs in favor of heightening the standard of review. *See Stratton v. E.I. DuPont de Nemours & Co.*, 363 F.3d 250, 254 (3d Cir. 2004) (applying similar reasoning). Regarding information accessibility, there is no reason to assume an imbalance. The Plan clearly states that Ms. Ford could request access to nonpublic personal information Unum collected in making its determinations, as long as she followed the correct procedures. (App'x, Ex. A at 43.) In addition, a review of the record shows that Unum made a conscientious effort to keep Ms. Ford informed of the decision-making process, as well as providing

her with detailed reasons for the decisions it rendered.  Accordingly, this factor does not act to heighten the standard of review in this case.  *See Stratton*, 363 F.3d at 254 (holding that when a company makes a conscientious effort to keep a claimant apprised of information it had at its disposal and provides the reasons behind its decisions, the arbitrary and capricious standard will not be heightened).  With respect to the third factor, the financial arrangement between Christiana and Unum, I have no basis to draw a conclusion.  The record does not contain enough information for me to ascertain what that arrangement might be.  It is unclear whether the contract is fixed for a term of years or changes annually, or whether the fee paid by Christiana is modified if Unum has unusually large outlays to pay claims.  With respect to the fourth factor, the status of the fiduciary, the record does not suggest that Christiana was suffering from financial or structural deterioration that would undermine its desire to maintain employee satisfaction.

Courts have considered other factors that call for heightened review.  These factors address procedural irregularities, bias, or unfairness in the review of the claimant's application for benefits.  They include:  (1) reversal of a claim determination in the absence of new medical information; (2) the use of self-serving and selective use of medical evidence; and (3) indications that the administrator's decision conflicts with its own employee's internal recommendations.  *Kosiba v. Merck & Co.*, 384 F.3d 58, 66 (3d Cir. 2004), *cert. denied*, 544 U.S. 1044 (2005); *Pinto*, 214 F.3d at 393-93; *Goletz v. Prudential Ins. Co. of Am.*, 425 F. Supp.2d 540, 551 (D. Del. 2006); *Freccia ex rel. Ercole v. Conectiv and Coventry Health Care of Del., Inc.*, 379 F. Supp.2d 620, 625 (D. Del. 2004).

12

Here, the first and third factors addressing procedural irregularity, bias, or unfairness are not directly at issue. Unum consistently denied Ms. Ford's claim for long-term disability benefits throughout its review process. In addition, there are no indications that Unum's final decisions conflicted with its own employees' internal recommendations. All of Unum's examiners concluded that Ms. Ford's recovery period should not have exceeded six weeks (App'x, Ex. B at 157, 158, 233, 235), which was well under the ninety-day elimination period.

The second factor, addressing the use of self-serving and selective use of medical evidence, is the factor at issue. In *Goletz*, a claimant similarly was denied long-term disability benefits by an insurance company whose plan was regulated by ERISA. 425 F. Supp.2d at 542. There, the court ultimately concluded that the insurance company engaged in impermissible self-dealing, resulting in a heightened standard of review. *Id.* at 553. The court determined that a heightened standard of review was required, because the insurance company failed to consider favorable evidence from the plaintiff's treating physician, and because the insurance company was selective in its use of medical evidence. *Id.* at 551-52.

There are several facts that distinguish *Goletz* from the case before me. In *Goletz*, the court found that the insurance company clearly gave more weight to evidence that favored the refusal of long-term disability benefits, including the reports of its physicians who examined the plaintiff's medical records. *Id.* at 551. However, in that case, the insurance company failed to reference the medical reports that favored the plaintiff, and it did not attempt to reconcile the conflicting opinions. *Id.* The court

13

stated that, while ERISA does not require special deference to treating physicians, the insurance company could not "reject reliable medical evidence without some objective basis for its conclusions." *Id.* (citation omitted). In contrast, Unum, in issuing its decisions to Ms. Ford, summarized Dr. Ufberg's medical findings and recommendations (App'x, Ex. B at 167, 238), then explained why it found his conclusions to be unreliable, citing objective support for its decisions. (*Id.* at 167, 238.)  For example, Unum posed the legitimate questions of why, in the presence of Ms. Ford's allegedly incapacitating pain, Dr. Ufberg did not recommend additional diagnostic testing, chronic pain management, and more frequent visits, and why he did not prescribe more than mild medications for pain.  In addition, unlike the present case, the insurance company in *Goletz* was selective in its use of medical testimony.  425 F. Supp.2d at 552.  That is, the company cited parts of a physician's testimony that supported its conclusions, but ignored other parts that undermined them.  *Id.*  Here, Unum did not employ such tactics.  All four of the health care professionals who reviewed the medical records came to the same general conclusions and adequately explained why they believed Dr. Ufberg's findings were unreliable.  Though it is noteworthy that Dr. Ufberg was the only physician that examined Ms. Ford in person, which certainly weighs in favor of heightening the standard of review, *see Goletz v. Prudential Ins. Co. of Am.*, 425 F. Supp.2d 540, 552 (D. Del. 2006) (finding it "suspect" that the defendant gave more weight to reports of physicians who only reviewed medical records than to reports of physicians who examined the plaintiff in person), the record does not, on balance, favor more than a slightly-heightened standard of review.

14

Accordingly, I conclude that the proper standard of review is a slightly-heightened arbitrary and capricious standard, to accommodate what appears to be a potential conflict.

    C.    *Ms. Ford's ERISA claim*

I acknowledge from the outset, as the court did in *Stratton*, that it is "easier to decide which standard to use than to apply it because it is not clear how to employ a slightly heightened form of arbitrary and capricious review."[6]  363 F.3d at 255.  The court in *Pinto* stated that in applying a heightened arbitrary and capricious review, a court should be deferential, "but not absolutely deferential."  214 F.3d at 393.  The court further stated, "[t]he greater the evidence of conflict on the part of the administrator, the less deferential our abuse of discretion standard."  *Id.*  (quoting *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 296 (5th Cir. 1999)).  Thus, because I apply only a slightly-heightened form of arbitrary and capricious review, I am required to be largely deferential to Unum's decision.  With marginally more scrutiny than I would under a traditional arbitrary and capricious review, I will examine whether Unum's decision is reasonable and supported by substantial evidence.

---

    [6] Indeed, in *Pinto* itself, the court acknowledged that "there is something intellectually unsatisfying, or at least discomforting, in describing our review as a 'heightened arbitrary and capricious' standard.  This locution is somewhat awkward. . . . Once the conflict become a 'factor'. . . , it is not clear how the process required by the typical arbitrary and capricious review changes."  214 F.3d at 392.  Nevertheless, although the court found the sliding-scale approach it adopted "wanting," it could find "no better method to reconcile *Firestone's* dual commands than to apply the arbitrary and capricious standard, and integrate conflicts as factors in applying that standard, approximately calibrating the intensity of. . .review to the intensity of the conflict."  *Id.* at 393.

Ultimately, Unum employed two registered nurses and two physicians to examine Ms. Ford's medical records.  (App'x, Ex. B at 155-57, 158, 231-33, 234-35.) Consistent with its examiners' conclusions, Unum determined that Ms. Ford sustained soft tissue injuries from the automobile accident in the form of a sprain/strain, and that the usual recovery time for such injuries should not have exceeded six weeks.  (*Id.* at 238.)  After summarizing Dr. Ufberg's findings, Unum concluded that his treatment of Ms. Ford was not consistent with incapacitating pain, and that, in the presence of incapacitating pain, one would have expected additional diagnostic testing, a chronic pain management referral, and the prescription of stronger pain medication.  (*Id.*) Those explanations are reasonable and supported by substantial evidence.  Therefore, whether or not I agree fully with Unum's handling of the matter,[7] I conclude that Unum's decision to deny Ms. Ford long-term disability benefits under its Plan is not arbitrary or capricious, even under a slightly-heightened standard of review.

D.    *Ms. Ford's Discrimination Claims*

Ms. Ford alleges that Unum discriminated against her in violation of Title VII or Section 1981 when it denied her claim for long-term benefits.[8]  (D.I. 2 at 1-3.)  Title VII, 42 U.S.C. § 2000e *et seq.*, prohibits employers from discriminating against their employees based on race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2(a).  Ms. Ford, who is African-American (App'x, Ex. B at 123), never identifies the

---

[7] I share a measure of Dr. Ufberg's concern that medical second guessing, even by well-meaning professionals, is problematic when the reviewing professionals have never laid eyes on the patient.

[8] *See supra* note 2.

16

basis of her claim of discrimination, whether it is race, gender, age, disability, or some
other classification.  In any event, because Unum was never the employer of Ms. Ford,
she cannot establish a discrimination claim against Unum under Title VII.  *See Walters*
*v. Metro. Educ. Enters., Inc.*, 519 U.S. 202, 205 (2002) (stating that the defendant is
subject to Title VII only if it meets the statutory definition of "employer").

Nor can Ms. Ford sustain a discrimination claim against Unum under 42 U.S.C. §
1981.  Section 1981 provides all persons within the jurisdiction of the United States with
"full and equal benefit of all laws and proceedings for security of persons and property
as is enjoyed by white citizens. . . ."  42 U.S.C. § 1981(a).  It protects persons' rights
from "impairment by nongovernmental discrimination and impairment under color of
State law."  42 U.S.C. § 1981(c).  A claim under Section 1981 fails because Ms. Ford
has not established that she is entitled to long-term disability benefits from Unum under
the law, or that Unum impaired her rights to receive benefits.

E.    *Other Claims*

Ms. Ford asserts claims relating to lost wages, pain and suffering, borrowing
money against her 401K plan, lost medical insurance, and "eligibility To [sic] be rehired
for employment after 17 years of service."  (D.I. 2 at 3, 5.)  She incorporates these
claims in her Complaint by a reference to claims filed in the Delaware Court of Common
Pleas.  (*Id.*)  In a Memorandum Order dated March 9, 2006 (Civ. A. No. 05-105, D.I.
18), I granted Unum's Motion to Dismiss the claims originally filed in the Court of
Common Pleas (Civ. A. No. 05-105, D.I. 2), finding that Ms. Ford's state law claims for
breach of contract, negligence, and intentional infliction of emotional distress were

17

preempted under ERISA, and that the damages she requested were not available under ERISA. (Civ. A. No. 05-105, D.I. 18.) Consequently, these other claims are not properly before me and are dismissed.

This ruling does not apply to the life insurance cancellation claim mentioned earlier. *See supra* note 4. That claim for "loss [of a] $75,000 Life Insurance Policy" (Civ. A. No. 05-105, D.I. 1, Ex. A at ¶10; D.I. 2 at 3, 5) presents a problem, because neither party has addressed it in a meaningful way in the summary judgment briefing. This may be a result of confusion stemming from my March 9, 2006 Memorandum Order. Although, in that Order, I did not state that I was dismissing Ms. Ford's life insurance policy claim, Unum reasonably could have understood that to be the result of the Order. However, such a dismissal would not be appropriate, because it is not clear whether that claim is preempted by ERISA or whether the damages requested with that claim are allowable under ERISA.

It seems likely that the alleged $75,000 life insurance policy relates to benefits offered as part of Ms. Ford's employment, thus indicating that ERISA may preempt this state law claim for breach of contract. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 44 (1987) ("ERISA comprehensively regulates. . . employee welfare benefits plans that, through the purchase of insurance or otherwise, provide. . .benefits in the event of sickness, accident, disability, or death.") (citing 29 U.S.C. § 1002(1)) (internal quotation marks omitted). However, because the record does not contain information that describes or explains the life insurance policy, and how Ms. Ford came to have any interest in it, I have no basis on which to make a determination. Accordingly, I will grant

18

the parties a further opportunity to submit evidence and briefing to show whether ERISA does or does not preempt this claim.  If ERISA does not preempt this claim, Ms. Ford must explain why this court retains jurisdiction over the claim. Furthermore, if ERISA does preempt her state law claim for breach of contract, it is unclear whether the damages associated with the allegedly wrongful termination of the policy would be available under ERISA.  Therefore, I also will grant the parties an opportunity to demonstrate whether damages for the alleged breach are appropriate.

## V.    CONCLUSION

I will grant Unum's Motion for Partial Summary Judgment and will deny Ms. Ford's Motion for Summary Judgment. I also will dismiss all of Ms. Ford's remaining claims, except her claim relating to the $75,000 life insurance policy. In addition, I will provide Ms. Ford with thirty days to submit briefing and evidence to support her life insurance policy claim.  I will allow Unum to move for summary judgment on the life insurance policy claim within ten days of Ms. Ford's submission, or,  if Ms. Ford makes no submission, within forty days of this Opinion and accompanying Order.  An appropriate order will follow.

19